UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WAYNE SCOTT,<br><br>Petitioner,<br><br>v.<br><br>DEAN BORDERS, Warden, California Institution for Men,<br><br>Respondent. | No. 1:16-cv-00599-LJO-SKO HC<br><br>**FINDINGS AND RECOMMENDATION THAT THE COURT DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 23)** |

      Petitioner, Roger Wayne Scott, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner presents two grounds for habeas relief: (1) prosecutorial misconduct and (2) ineffective assistance of counsel. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief.

# I. Procedural and Factual Background[1]

Jolene Jones ("Jones") and Petitioner lived together off and on for 12 years, and had a child together. As of July 15, 2012, the two did not live together, but Petitioner visited Jones' apartment every day to see their son. During their relationship, Petitioner and Jones were involved in several physical altercations. One of these altercations resulted in Petitioner being convicted of spousal abuse in July 2011.

On July 15, 2012, Petitioner arrived at Jones's apartment in the morning. Petitioner was still there in the evening when his daughter Ambry Perez ("Perez") and her boyfriend, Johnny Gonzalez, Jr., ("Gonzalez"), arrived at the apartment. Jones, Perez, and Gonzalez planned to get high on methamphetamine, but Petitioner objected to Jones having company late at night.

Petitioner and Jones got into an argument and began yelling at each other. Jones threatened to call the police. As Jones walked to the back door of the apartment, Petitioner put his arm around her from behind, holding her and choking her neck so she could not go near the door.

When Petitioner first started choking Jones, they were in the kitchen. He then tried to drag her down the hallway to the bedroom. Jones was not able to breathe while Petitioner was choking her. Jones was trying to scream and told Petitioner she wanted to leave, but Petitioner told her she was not going anywhere. Jones had her cell phone in her hand, and Petitioner forcibly grabbed it from her and threw it across the room, breaking it. Petitioner stated he would not allow her to call the police.

While Petitioner tried to drag Jones into the bedroom, she fought to free herself. She grabbed a mirror from a stand in a hallway, reached behind her, hit Petitioner with it, and "busted his head open."

---

[1] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Scott* (Cal. Ct. App. Sept. 24, 2014) (No. F066446), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

2

Perez, Petitioner's daughter, described the events as follows. Petitioner got "a little upset" with Jones because Jones was talking about getting a tattoo. When Petitioner learned of this plan, he said he did not want any guests in the house; Jones responded it was her house. Jones was "kind of getting in [Petitioner's] face" and irritating him. The two got into an argument that never left the kitchen. Jones tried to hit Petitioner, who was trying to fight her off. Petitioner then bear hugged her so she would not harm him or herself, at which point Jones got a mirror and hit Petitioner on the head.

Petitioner testified that he was living in Jones's apartment, with Jones and their son, from April 2012 to the date of his arrest. Petitioner was asleep on the evening of July 15, 2012, but Jones woke him up to tell him that Perez and Gonzalez were coming over to the apartment. Petitioner told Jones that she should not have people over that late. Petitioner knew that Perez and Gonzalez were coming to the apartment to do drugs and give Jones a tattoo.

Jones let Perez and Gonzalez in through the back door. Petitioner told them that he did not want them to come in the house, bringing drugs and tattooing at 10:30 at night. Jones became angry with Petitioner and Petitioner picked her up in a bear hug from the back and turned her around. As Petitioner turned Jones around, Jones tried to grab a knife from the kitchen counter. Petitioner grabbed her hand to keep her from getting the knife. He moved her from the back door and carried her into the living room—a distance of four to five feet. Jones grabbed a mirror off a stand and hit him in the head and Petitioner let her go.

Petitioner denied dragging Jones or putting his arm around her neck. Petitioner also denied preventing Jones from leaving the home, attempting to force her to go to the bedroom, or threatening her to keep her from calling the police.

Petitioner went back to the bedroom to pack his clothes and told Jones he was going to take their son with him. Jones went to the kitchen table and showed Gonzalez a picture on her

3

cell phone of the tattoo she wanted. Petitioner entered the kitchen, grabbed the phone off the table, broke it, and told Gonzalez he would not be tattooing Jones. Petitioner then went back into the bedroom to finish packing his clothes. Petitioner did not know Perez had called the police.

Officers from the Hanford Police Department responded to the apartment. Officer Cavazos spoke with Jones, who was very emotional and had a difficult time speaking and answering his questions. Officer Cavazos did not see any bruising on Jones's neck, head, or face, but did see what appeared to be a fresh bruise on her arm.

Officer Cavazos took photographs of the apartment, including a cell phone that was broken into three pieces in the living room. He also took a photograph of an injury to Petitioner's head, above the right ear. Petitioner pointed the injury out and said he was injured when Petitioner struck him with the mirror. Petitioner told Officer Cavazos he may have broken the cell phone.

Petitioner explained to Officer Cavazos that he grabbed Jones with his arms to pull her into the bedroom. Petitioner alleged the argument started because he did not like Perez and Gonzalez visiting so late at night and did not want Jones to get a tattoo.

Officer Cavazos also spoke to Perez that evening. Perez did not tell Officer Cavazos that Jones had "gotten up in [Petitioner's] face" or that Jones was the aggressor. Perez stated that Petitioner had grabbed Jones and tried to pull her toward the bedroom, and that he choked her and would not let her leave the apartment.

On September 24, 2012, Petitioner wrote Jones a letter, despite the fact he had been under a court order since July not to contact her. In the letter, Petitioner referenced the Fifth Amendment and the "California Code of Perjury" section that states a domestic violence victim cannot be put in jail for not testifying.[2]

---

[2] California Code of Civil Procedure § 1219(b) provides:

Petitioner was charged with assault by means of force likely to produce great bodily harm (Cal. Penal Code § 245(a)(4)); willful infliction of corporal injury resulting in a traumatic condition on a former cohabitant within seven years of a prior conviction for the same offense (Cal. Penal Code §§ 273.5(a), (e)); false imprisonment by violence or menace (Cal. Penal Code § 236); intimidation of a witness by force or threatened use of force (Cal. Penal Code § 136.1(c)(1)); and robbery (Cal. Penal Code § 211)). It was also alleged that Petitioner had suffered a prior "strike" conviction (Cal. Penal Code §§ 667(b) – (i), 1170.12(a) – (d)).

A jury found Petitioner guilty of false imprisonment by violence or menace and intimidation of a witness by force or threated use of force, and convicted him of the lesser included offenses of simple assault (Cal. Penal Code § 240) and simple battery (Cal. Penal Code § 242). Petitioner admitted the prior strike conviction allegation, and was sentenced to nine years and four months in prison.

On September 24, 2014, the California Court of Appeal, Fifth Appellate District, affirmed Petitioner's conviction. On December 10, 2014, The California Supreme Court summarily denied review.

On February 20, 2015, Petitioner filed a petition for writ of habeas corpus with the Kings County Superior Court, which was denied on May 11, 2015. On October 21, 2015, Petitioner filed a petition with the Court of Appeal, which was denied on October 30, 2015. On November 19, 2015, Petitioner filed another petition with the Court of Appeal, which was denied on December 15, 2015. On January 4, 2016, Petitioner filed a petition with the California Supreme Court, which was denied on February 17, 2016.

//

---

Notwithstanding any other law, a court shall not imprison or otherwise confine or place in custody the victim of a sexual assault or domestic violence crime for contempt if the contempt consists of refusing to testify concerning that sexual assault or domestic violence crime.

On April 22, 2016, Petitioner filed his petition for writ of habeas corpus. Respondent filed a Motion to Dismiss on August 18, 2016. On October 3, 2016, this Court (1) granted Petitioner's motion to amend his petition; (2) struck Petitioner's claim that the prosecutor failed to give a jury unanimity instruction as unexhausted; and (3) denied Respondent's motion to dismiss. (*See* Doc. 21.) Respondent filed a response on December 2, 2016, and Petitioner filed a reply on December 12, 2016.

## II. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. The State Court Did Not Err in Rejecting Petitioner's Prosecutorial Misconduct Claims

In his first ground for habeas relief, Petitioner alleges prosecutorial misconduct. (Doc. 23.) Specifically, Petitioner claims the prosecutor improperly: (1) asked Petitioner whether a government witness was lying on cross-examination; (2) used tainted evidence, a photo, from Petitioner's 2011 spousal abuse case; and (3) knowingly used perjured testimony from a police officer. *Id*. at 7. Respondent counters that the prosecutor's conduct did not violate Petitioner's clearly established constitutional rights. (Doc. 24 at 17.)

#### A. Standard of Review for Prosecutorial Misconduct Claims

A prosecutor's improper comments will be held to violate Constitutional rights only if the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Prosecutorial misconduct violates the Due Process guarantee of a fair trial if it prejudicially affects the rights of the defendant. *United States v. Yarbrough*, 852 F.2d 1522, 1539 (9th Cir. 1988) (citing *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

The Court must determine whether the alleged misconduct by the prosecutor rendered the trial fundamentally unfair. *Darden*, 477 U.S. at 183. To grant habeas relief, the Court must find that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

//

//

//

8

**B. Prosecutorial Misconduct During Cross-Examination**

Petitioner claims it was prejudicial error for the prosecutor to ask Petitioner during cross-examination whether Officer Cavazos lied during the Officer's testimony.

**1. State Court of Appeal Opinion**

Petitioner's testimony at trial differed from Officer Cavazos's testimony regarding what Petitioner told the Officer on the night of the incident. The Court of Appeal described Petitioner's testimony at trial as follows:

After the prosecutor asked some questions about [Petitioner's] version of events, the following took place:

> Q. Now, do you recall giving a statement to Officer Cavazos?
>
> A. No, sir.
>
> Q. You don't recall, or you are saying you didn't give him one?
>
> A. I didn't give him one. I gave Officer Stingley a statement.
>
> Q. Okay, and so when Officer Cavazos testified under oath yesterday, *was he lying* about taking a statement from you?
>
> A. *Yes, he was*.
>
> Q. And you already told us that you don't know Officer Cavazos?
>
> A. I do not know him.
>
> Q. And you don't know of any reason why he would come in here and *lie under oath*?
>
> A. *No, sir*.
>
> Q. Did you hear [Jones] say she gave Officer Cavazos a statement?
>
> [¶] . . . [¶]
>
> A. Yes, sir. [¶] . . . [¶]
>
> Q. Now, is it your testimony here today then, because you have told us everything you said is the truth, *is it your testimony that Officer*

9

|   |    | *Cavazos yesterday was lying* when he said you told him you grabbed her and placed her in a hold? |
|---|----|---|
|   |    | [Defense Counsel]: Objection, Asked and answered. |
|   |    | The Court: Overruled. [¶] . . . [¶] |
|   | A. | I don't think it was too much of a lie, I did make one comment. The comment being he asked me did Ms. Jones - - did you have a head mark and I said, yeah. And he said did you grab Ms. Jones, and I said I grabbed her hand from stopping her from grabbing a knife. I didn't grab her in a choke hold. [¶] . . . [¶] |
|   | Q. | And I am just curious, because when you talked to the officer or officers, whichever one you talked to that night, there is no indication of anything about a knife, this is the first I heard of that. |
|   | A. | No, it should have been a statement he should have wrote down, because he asked me a question. I said when I was reaching her from stopping to grab the knife I held her in my hand, I didn't have her in no choke hold. |
|   | Q. | I am a little bit confused then. Because when you said he should have wrote it down, and you just pointed to Officer Cavazos? |
|   | A. | He came in the house. |
|   | Q. | He came in the house, but I though you said you didn't give a statement. |
|   | A. | I didn't give him a full statement. He asked me did I assault [Jones], and I did not assault [Jones], but I was trying to tell him what I did and he walked out. |
|   | Q. | Okay, so you attempted to give him a statement? |
|   | A. | I attempted to give him a statement. |
|   | Q. | And while you were attempting to give him a statement he turned his back? |
|   | A. | He took the picture of my head and turned around and walked back out. |
|   | Q. | Did you tell him anything about taking the phone from her? |
|   | A. | No. |
|   | Q. | *Was he lying yesterday* when he told the jury under oath that you |

10

|   |   |
|---|---|
| 1 | said you had taken the phone from her, that you could have? |
| 2 | A. *Yes, he is lying.* |

*People v. Scott* (Cal. Ct. App. Sept. 24, 2014) (No. F066446), at 7-9 (emphasis added).

While the Court of Appeal noted this claim was not cognizable on appeal, because defense counsel did not object to the questioning on the ground of prosecutorial misconduct at trial, the Court proceeded to address the merits of the claim. *Id*. at 7, 9-10.

The Court of Appeal explained that Petitioner's argument relies on a line of federal authority that holds "were they lying" questions constitute prosecutorial misconduct. *Id*. at 10 (citing *U.S. v. Harrison*, 585 F.3d 1155, 1158 (9th Cir. 2009); *U.S. v. Sanchez*, 176 F.3d 1214, 1219-1220 (9th Cir. 1999); *U.S. v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996); *U.S. v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987)).

The California Supreme Court has declined to adopt this categorical approach. Instead, the Supreme Court has instructed courts to

> carefully scrutinize 'were they lying' questions in context. They should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However, in its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions.

*Scott*, (No. F066446), at 12 (quoting *People v. Chatman*, 38 Cal. 4th 344, 380 (2006)).

Here, the Court of Appeal found

> the prosecutor clearly asked the initial question, about whether [Petitioner] recalled giving a statement to [Officer] Cavazos, in preparation for attempting to impeach [Petitioner's] testimony or elicit a prior inconsistent statement. This was a permissible purpose. None of the questions appear to be designed to elicit irrelevant or speculative testimony, nor were they argumentative. [FN 11] Although [Petitioner] did not know [Officer] Cavazos personally, [Petitioner] testified as a percipient witness and had personal knowledge of the events. (See *Chatman*, *supra*, 38 Cal. 4th at p. 382.) By choosing to testify, [Petitioner] put his own veracity in issue. Because his testimony contradicted that of [Officer] Cavazos, it was permissible for the prosecutor to seek to clarify [Petitioner's] position and give him the opportunity to explain the divergent testimony. Under

11

the circumstances – including the fact the prosecutor's questions elicited additional information from [Petitioner] – the questions "appropriately assisted the jury in resolving the issue of whose testimony was more credible. There was no misconduct." (*People v. Collins*, *supra*, 49 Cal.4th at p. 206; accord, *People v. Hawthorne*, *supra*, 46 Cal.4th at pp. 96-98; *People v. Tafoya* (2007) 42 Cal.4th 147, 177-179; *Chatman*, *supra*, 38 Cal.4th at p. 383.)

> FN 11 "An argumentative question is a speech to the jury masquerading as a question. The questioner is not seeking to elicit relevant testimony." (*People v. Williams* (2013) 56 Cal.4th 165, 192.)

*Id*. at 12-13

### 2. Denial of Petitioner's Prosecutorial Misconduct Claims Was Not Objectively Unreasonable

The Ninth Circuit has held "[i]t's black letter law that a prosecutor may not ask a defendant to comment on the truthfulness of another witness." *Harrison*, 585 F.3d at 1158-59 (citing *U.S v. Combs*, 379 F.3d 564, 572 (9th Cir. 2004); *U.S. v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002)). However, the United States Supreme Court has not held that a prosecutor violates a defendant's due process rights by asking "are they lying?" questions. Under AEDPA, circuit law is only "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law," but only holdings of the United States Supreme Court must be reasonably applied by state courts. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Lockyer v. Andrade*, 538 U.S. 63, 71-2 (2003).

Because there is no clearly established United State Supreme Court authority, Petitioner is not entitled to relief. Petitioner cannot show that the state court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law; therefore the Court recommends denying the claim.

//

//

//

12

## C. Remaining Prosecutorial Misconduct Claims

Petitioner raises two additional prosecutorial misconduct claims: (1) the prosecutor knowingly used a police officer's perjured testimony; and (2) the prosecutor knowingly used tainted photo evidence from the 2011 spousal abuse case involving Petitioner. (Doc. 23 at 7.) The Court of Appeal denied Petitioner's petition for writ of habeas corpus, finding these claims to be "conclusional." (Lodged Doc. 9 at 1.)

In his petition before this Court, under his claim for prosecutorial misconduct, Petitioner wrote, "prosecutor use of tainted evidence photo[s] from a 2011 case. Knowingly using perjured testimony from a police officer." (Doc. 23 at 7.)

As to the use of "tainted evidence," issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.

No clearly established Federal law applies to permit a grant of federal habeas relief for the prosecutor's admission of "tainted evidence." *Holley*, 568 F.3d at 1101 (The Supreme Court has not determined whether the admission of irrelevant or prejudicial evidence constitutes a due process violation.). Consequently, the Court recommends denying relief on Petitioner's claim

that evidence was improperly admitted at trial.

Petitioner also claims the Prosecutor "knowingly used perjured testimony" from Officer Cavazos. (Doc. 23 at 7.) Specifically, Petitioner claims Officer Cavazos lied about: (1) the evidence he took at the crime scene; (2) photo evidence used by the prosecutor at trial; and (3) taking statements from Petitioner and witnesses at the crime scene. *Id*. at 8.

The knowing use of perjured testimony by a prosecutor generally requires a Court to set aside a conviction. *United States v. Agurs*, 427 U.S. 97, 103 (1976) ("[T]he Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."). To establish a claim for relief based on the prosecutor's use of perjured testimony, a petitioner must (1) establish that the testimony was false and (2) demonstrate that the prosecution knowingly used the perjured testimony. *Unites States v. Polizzi*, 801 F.2d 1543, 1549-50 (9th Cir. 1986).

Here, Petitioner provided examples of times where Petitioner's and Officer Cavazos' testimony differed as to the events on the night of the incident; however, Petitioner has not provided any proof that Officer Cavazos lied on the stand or that the prosecutor knew Officer Cavazos was lying on the stand. Because Petitioner cannot establish that Officer Cavazos' testimony was false or establish that the prosecutor knew the testimony was false, Petitioner cannot state a claim for habeas relief. Therefore, the Court recommends denying this claim.

In his petition, Petitioner separately claims Officer Cavazos committed perjury on the stand. (Doc. 23 at 8.) It is unclear from the petition whether this claim is in support of Petitioner's claim for prosecutorial misconduct or a separate claim. Assuming the claim is a separate claim, the Court recommends denying it because Petitioner cannot provide proof that Officer Cavazos perjured himself.

14

**IV. The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claims**

In his second ground for habeas relief, Petitioner alleges ineffective assistance of counsel. *Id*. at 5. Specifically, Petitioner claims counsel failed to: (1) object to the prosecutor's improper questioning; (2) investigate the case; (3) subpoena witnesses; (4) cross-examine the prosecution's expert witness; (5) object to the prosecutor's use of "tainted photos"; (6) subpoena a second police officer; and (7) file a timely notice of appeal. *Id*. Respondent counters that the Court of Appeal's denial of Petitioner's ineffective assistance of counsel claims was reasonable. (Doc. 24 at 13-16.)

**A. Standard of Review for Ineffective Assistance of Counsel Claims**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorneys' representation was deficient and (2) prejudice to Petitioner. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's

15

performance was deficient. *Id.*

## B. State Court of Appeal Opinion

With regard to Petitioner's claim that counsel should have objected to the prosecutor's questions to Petitioner regarding whether Officer Cavazos lied on the stand, the Court of Appeal held,

> [a]nticipating we would find forfeiture [on the prosecutorial misconduct claim], defendant contends counsel's failure to object constituted ineffective assistance of counsel. Since, as we explain, "we discern no misconduct on the merits, defendant's ineffective assistance claim fails" (*People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14), and we do not discuss it further.

*Scott*, (No. F066446), at 10.

The Court of Appeal dismissed all of Petitioner's other ineffective assistance of counsel claims as "conclusional," finding that Petitioner did "not provide an adequate factual context to show that any failures of trial counsel caused [P]etitioner sufficient prejudice to warrant setting aside his conviction." (Lodged Doc. 9 at 1.)

## C. Denial of Petitioner's Ineffective Assistance of Counsel Claims Was Not Objectively Unreasonable

Petitioner maintains that his trial counsel was ineffective for failing to object when the prosecutor asked Petitioner whether Officer Cavazos was lying during his testimony. The California Supreme Court has held that "are they lying" questions are improper if they are argumentative, or designed to elicit irrelevant or speculative testimony—but proper if they are addressed to a defendant who has personal knowledge that may "assist the trier of fact in resolving credibility questions." *Chatman*, 38 Cal. 4th 344, 383-84.

Here, the Court of Appeal found the prosecutor's line of questioning was "in preparation for attempting to impeach [Petitioner's] testimony or elicit a prior inconsistent statement." *Scott*, (No. F066446), at 11. Thus, under *Chatman*, the prosecutor's questions to Petitioner were proper as they were intended to assist the jury in resolving credibility questions. Because

16

the questions were admissible under California evidence law, there was no basis for Petitioner's attorney to object under California law. Therefore, the attorney's performance was not outside the range of professionally competent assistance. *See Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance of counsel.") (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). For these reasons, the state court's denial of Petitioner's ineffective assistance of counsel claims was reasonable, and the Court recommends denying the claim.

Petitioner raised six other grounds for ineffective assistance of counsel in his petition: failure to (1) investigate the case; (2) subpoena witnesses; (3) cross-examine the prosecution's expert witness; (4) object to the prosecutor's use of "tainted photos"; (5) subpoena a second police officer; and (6) make a timely notice of appeal. (Doc. 23 at 5.) The Court of Appeal denied these claims because Petitioner did "not provide an adequate factual context to show that any failures of trial counsel caused petitioner sufficient prejudice to warrant setting aside his conviction." (Lodged Doc. 9 at 1.)

Similarly, in his petition before this Court, Petitioner has not alleged any facts to support his claims of ineffective assistance of counsel. As such, Petitioner cannot meet either prong of the *Strickland* test as he has not shown his attorneys' representation was deficient, or established prejudice. As Petitioner has not met his burden to prove ineffective assistance of counsel, the Court recommends denying this claim.

//

//

//

//

**V.       Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>     (B) the final order in a proceeding under section 2255.
>
>     (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>     (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . .

part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court recommends declining to issue a certificate of appealability.

## VI. Recommendations and Conclusion

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned Objections to Magistrate Judge's Findings and Recommendations. Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 13, 2018**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE